UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-21336-ALTMAN/Reid

**ROSA VICTORIA TRUJILLO**,

    *Plaintiff*,

*v.*

**FRANK BISIGNANO,**
**COMMISSIONER OF SOCIAL SECURITY**,

    *Defendant.*[1]
_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION

Our Plaintiff, Rosa Victoria Trujillo, sought "disability insurance benefits" from the Social Security Administration, "alleging disability beginning September 1, 2020." Administrative Law Judge Decision ("ALJ Decision") [ECF No. 10] at 14. The ALJ determined that Trujillo wasn't disabled, *see id.* at 24, and the Social Security Administration Appeal Council denied Trujillo's request for review, *see* Notice of Appeals Council Action [ECF No. 10] at 5. Trujillo appealed the ALJ's decision to us, *see generally* Complaint [ECF No. 1], and the parties filed cross-motions for summary judgment, *see* Plaintiff's Motion for Summary Judgment ("Pl's MSJ") [ECF No. 13]; Defendant's Motion for Summary Judgment (Def's MSJ") [ECF No. 16].

---

[1] The original Defendant in this case, Martin O'Malley, resigned from his position as Commissioner of the Social Security Administration on November 29, 2024. The current Commissioner of the Social Security Administration, Frank Bisignano, has been automatically substituted in as the Defendant. *See* FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."); *see also Financial Services Industry Leader Frank Bisignano to be the 18th Commissioner of Social Security*, SOCIAL SECURITY ADMINISTRATION (May 7, 2025), https://blog.ssa.gov/financial-services-industry-leader-frank-bisignano-to-be-the-18th-commissioner-of-social-security/.

We referred this matter to U.S. Magistrate Judge Lisette M. Reid for a Report and Recommendation. *See* Scheduling Order and Order of Referral [ECF No. 9] at 1. In her Report and Recommendation, Magistrate Judge Reid suggested that we affirm the ALJ's decision, grant the Defendant's MSJ, and deny the Plaintiff's MSJ. *See* Report and Recommendation ("R&R") [ECF No. 18] at 1. The Plaintiff filed objections to the R&R. *See* Plaintiff's Objections to the Report and Recommendation ("Objections") [ECF No. 19]. The Defendant didn't object to the R&R and didn't respond to the Plaintiff's Objections. *See generally* Docket. After careful review, we **ADOPT** the R&R in full, **GRANT** the Defendant's MSJ, and **DENY** the Plaintiff's MSJ.

## THE FACTS[2]

Trujillo asked the Social Security Administration to find her "disabled" under 42 U.S.C. §§ 416(i) and 423(d). *See* ALJ Decision at 15 ("The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act."). Trujillo had "previously worked as a customer service representative for Florida Blue until September 1, 2020," until "she claimed that she could no longer work because of anxiety." R&R at 4–5 (citing ALJ Decision at 17). In addition to her anxiety, Trujillo alleged that she had "hypertension, . . . major depressive disorder, bipolar I disorder, and migraine headaches." R&R at 5 (citing ALJ Decision at 20). The ALJ heard from two witnesses during the administrative hearing: Trujillo and a vocational expert, Kaitlyn Bates. *See id.* at 4–6; *see also generally* ALJ Hr'g Tr. [ECF No. 10] at 59–75. The ALJ also considered medical evidence from three doctors: the Plaintiff's psychiatrist, Dr. Noel Delgadillo; and the Defendant's two medical experts, Dr. Robert Hodes and Dr. Leif Davis. *See* R&R at 6–7.

---

[2] We rely here on the factual and procedural background Magistrate Judge Reid laid out in her R&R. *See* R&R at 4–9. The Plaintiff didn't object to any of Magistrate Judge Reid's factual findings, *see generally* Objections, and nothing in the record causes us to doubt her recitation of the relevant facts, *see Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993) ("Because Johnson did not file specific objections to *factual findings* by the magistrate judge, there was no requirement that the district court *de novo* review those findings.").

2

After hearing all the evidence, the ALJ conducted the "five-step sequential evaluation process for determining whether an individual is disabled." ALJ Decision at 15 (citing 20 C.F.R. § 404.1520(a)). This "five-step, sequential evaluation process" asks: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ('RFC') assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

The ALJ concluded that Trujillo hadn't "engaged in substantial gainful activity since September 1, 2020," and that she had several "severe impairments" (including depression, bipolar disorder, and anxiety). ALJ Decision at 17. At the same time, the ALJ determined that these "severe impairments" didn't "prevent Plaintiff from engaging in activities of daily living, and that she is able to function independently." R&R at 8 (citing ALJ Decision at 19). And, because Trujillo *could* function independently, the ALJ found that Trujillo "retained the residual functional capacity to perform a full range of work at all exertional levels subject to certain non-exertional limitations." *Id.* at 9 (citing ALJ Decision at 19). The ALJ thus found that Trujillo wasn't "disabled," as defined in the Social Security Act, because she could still perform "work that existed in significant numbers in the national economy." *Ibid.* (citing ALJ Decision at 23); *see also ibid.* ("The ALJ determined the following non-exertional limitations: she can follow simple instructions; she can frequently interact with coworkers, supervisors; and the public; and she can concentrate in two-hour increments without a break. . . . The ALJ found that Plaintiff could not perform her past relevant work but could work as a hand packager, laundry worker I, or cleaner II." (citing ALJ Decision at 19, 23)).

3

In our case, Trujillo argued that the ALJ erred in two ways: "(1) the determination of [Trujillo's] residual functional capacity ('RFC') was improper and unsupported by substantial evidence because the ALJ rejected medical assessments and created a mental RFC unsupported by the record; and (2) the RFC failed to reflect the moderate limitations in concentration, persistence and pace set forth in the psychiatric review technique." R&R at 2 (citing Pl's MSJ at 1).

After reviewing the parties' contentions and the ALJ's decision, Magistrate Judge Reid recommended that we reject both arguments. *First*, Magistrate Judge Reid determined that (1) the "ALJ considered the entirety of Plaintiff's condition when assessing the RFC," and (2) the ALJ reasonably concluded that Trujillo "has a medically determinable impairment that could reasonably be expected to produce her symptoms." *Id.* at 12 (citing ALJ Decision at 20). In the ALJ's view, however, Trujillo's "statements regarding the intensity, persistence and the limiting effects of such symptoms were inconsistent with the medical evidence and other evidence in the record." *Ibid.* And, while the ALJ rejected Trujillo's expert's testimony about Trujillo's various impairments, Magistrate Judge Reid was satisfied that the ALJ's RFC decision was adequately supported by the record. *See id.* at 12 ("[T]he ALJ had good reason to give little weight to the medical opinion. An ALJ properly assesses a claimant's RFC by discussing a claimant's impairments and thereafter expressing a claimant's RFC in vocationally relevant terms."). *Second*, Magistrate Judge Reid explained that the ALJ did, in fact, find that Trujillo "had a moderate limitation with regard to concentrating, persisting, or maintaining pace." *Id.* at 15. Despite these limitations, the Magistrate Judge said, the ALJ properly "determined that the evidence demonstrated Plaintiff could engage in simple, routine, repetitive tasks, despite moderate limitations in concentration, persistence and pace." *Id.* at 16. For these reasons, Magistrate Judge Reid recommended that we affirm the ALJ's decision. *See id.* at 16–17.

## THE LAW

District courts must review *de novo* any part of a magistrate judge's disposition that has been

4

properly objected to. *See* FED. R. CIV. P. 72(b)(3). Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged that Congress's intent was to require a *de novo* review only where objections have been properly filed—and not when neither party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). "If no objection or only [a] partial objection is made to the magistrate judge's report, the district judge reviews those unobjected portions for clear error." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) (cleaned up)).

When a party timely objects to a magistrate judge's report and recommendation, the district judge must make a *de novo* determination "of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Leonard v. Polk Cnty. Sheriff's Dep't*, 2019 WL 11641375, at *1 (M.D. Fla. Apr. 16, 2019) (Jung, J.). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Tardon*, 493 F. Supp. 3d 1188, 1209 (S.D. Fla. 2020) (Lenard, J.) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)). The "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citation omitted).

Our review of an ALJ's decision is "limited to an inquiry into whether there is substantial evidence to support the findings of the [ALJ], and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The latter determination—whether the ALJ applied the correct legal standard—is a legal one subject to *de novo* review. *Graham v. Bowen*, 90 F.2d 1572, 1575 (11th Cir. 1986) (citation omitted). "And whatever the meaning of 'substantial' in other

5

contexts, the threshold for such evidentiary sufficiency [in Social Security appeals] is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ibid.* (cleaned up). In other words, we "may not decide the facts anew, reweigh the evidence, or substitute our judgment" for the ALJ's—even if the "evidence preponderates against the [ALJ's] decision." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (cleaned up).

## ANALYSIS

Trujillo asserts two objections to Magistrate Judge Reid's R&R—both concerning the ALJ's RFC assessment. *First*, Trujillo objects to Magistrate Judge Reid's finding that the "ALJ did not err in producing a mental RFC that was not supported by opinion evidence[.]" Objections at 1. Although Trujillo concedes that "the RFC [wasn't] required to mirror a medical opinion[,]" she insists that the "absence of guiding opinion evidence" was fatal to the ALJ's RFC analysis because "the complexities of the psychological and cognitive evidence in the record were not so simple as to allow an ALJ to reliably interpret." *Id.* at 1–2. Put another way, Trujillo believes that the ALJ improperly assessed Trujillo's RFC because the ALJ wasn't equipped to consider Trujillo's psychological and cognitive complexities without explicitly relying on an expert medical opinion. *See id.* at 2 ("Here as well, there was no indication that the evidence of record was so simple as to allow the ALJ to rely on his own lay interpretation of psychological and cognitive reporting to grasp the functional impact of Plaintiff's severe depression, bipolar and related disorders, and anxiety disorder. Only trained medical professionals possess such skill and experience." (cleaned up)). *Second*, and relatedly, Trujillo contends that Magistrate Judge Reid failed to appreciate that, "while a limitation to simple instructions may speak to concentration on some level, it says nothing that accounts for persistence or pace." *Id.* at 3. We reject both objections.

An RFC is used "to determine whether the claimant is capable of performing 'past relevant work,'" and it "takes into account both physical and mental limitations." *Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49 (11th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(1)); *see also Malak v. Comm'r of Soc. Sec.*, 131 F.4th 1280, 1286 (11th Cir. 2025) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). An ALJ must "consider a claimant's medical condition taken as a whole[,]" so the ALJ must account for *all* "severe and non-severe" impairments "when assessing a claimant's RFC." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1266 (11th Cir. 2019). An ALJ's RFC assessment is "based on all the relevant evidence, including both medical and nonmedical evidence"—and, while "medical opinion evidence . . . is not required in every case," it is "particularly helpful" when the claimant has "a complicated medical case" with "many longstanding physical and mental ailments." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021). At the end of the day, however, "the regulations make clear that the task of determining a claimant's RFC and ability to work is solely within the province of the ALJ, not the claimant's doctors." *Watkins v. Comm'r, Soc. Sec. Admin.*, 2025 WL 18514, at *16 (11th Cir. Jan. 2, 2025).

Starting with Trujillo's first objection, then, we agree with Magistrate Judge Reid that the ALJ conducted a legally sufficient RFC assessment. The ALJ "summarized Plaintiff's testimony and her reports to providers, evaluated the prior administrative medical findings, and adequately discussed the medical evidence of record that led to the RFC finding, including normal and abnormal evidence." R&R at 13. The ALJ meticulously considered each of Trujillo's various physical and mental impairments, such as her high blood pressure, *see* ALJ Decision at 17 ("[Trujillo's] blood pressure was 156/90. . . . The record suggests mild or no findings related to hypertension, such as issues with vertigo, headaches, tinnitus, vision loss, coronary artery disease, heart failure, peripheral vascular

7

disease, and chronic kidney disease."), her frequent headaches, *see ibid.* ("The claimant has also reported headaches. At the hearing, the claimant testified that she has daily headaches." (citation omitted)), her anxiety, *see id.* at 20 ("She testified that she is not able to work because she wakes up with daily anxiety. She testified that her anxiety lasts a couple of hours a day and she allegedly spends the morning vomiting. . . . She also stated that she does not eat and is too anxious to drive herself on the highway."), and her depression, *see ibid.* ("The claimant has alleged depressed moods, decreased energy, crying spells, feeling overwhelmed, and continued isolation."). The ALJ also recognized that Trujillo's anxiety manifests itself in ways that limit her ability to perform work-related activities. *See ibid.* ("She testified that she is not able to work because she wakes up with daily anxiety. She testified that her anxiety lasts a couple of hours a day and she allegedly spends the morning vomiting. The claimant also testified that she locks herself in a closet and cries all night.").

In making these findings, the ALJ appropriately considered (and weighed) Trujillo's testimony, the treatment records of Dr. Delgadillo (Trujillo's treating psychiatrist), the Defendant's experts, and her own observations. *See Rich v. Comm'r, Soc. Sec. Admin.*, 2024 WL 3634230, at *2 (11th Cir. Aug. 2, 2024) ("In formulating an RFC, the ALJ examines all relevant medical and other evidence, including statements provided by medical sources and descriptions and observations of the limitations."). After considering this robust record, the ALJ concluded that, while Trujillo's "mental impairments are severe[,]" Trujillo's statements about "the intensity, persistence, and limiting effects" of these impairments were "inconsistent" and that Trujillo didn't exhibit "gross abnormalities[.]" ALJ Decision at 21. Like Magistrate Judge Reid, we find that the ALJ's RFC is supported by substantial evidence. *Cf. Biestek*, 587 U.S. at 103 ("[Subtantial evidence] means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (cleaned up)).

Trujillo argues that the RFC is flawed because the ALJ didn't have "guiding opinion evidence" to explain "the complexities of the psychological and cognitive evidence in the record[.]" Objections

8

at 1–2. And Trujillo believes that her mental impairments are so complex that an ALJ couldn't conduct a proper RFC assessment without relying on an expert medical opinion. *See id.* at 2 ("Here as well, there was no indication that the evidence of record was so simple as to allow the ALJ to rely on his own lay interpretation of psychological and cognitive reporting to grasp the functional impact of Plaintiff's severe depression, bipolar and related disorders, and anxiety disorder. Only trained medical professionals possess such skill and experience."). But the ALJ specifically relied on Dr. Delgadillo's treatment records to find that Trujillo "had no gross abnormalities[,]" that she "did not show signs of cognitive difficulty," and that she "denied suicidal or homicidal ideations, hallucinations, delusions, and her behavior was generally appropriate." ALJ Decision at 20–21; *see also id.* at 21 ("The claimant's treatment providers generally noted normal concentration and she did not show signs of cognitive difficulty.").[3]

---

[3] Trujillo relies on two cases for her position here. *See Nakisha C. v. Commissioner, Social Security Administration*, 2020 WL 13595105, at *17 (N.D. Ga. Oct. 19, 2020) (Anand, Mag. J.) ("[I]t appears that the ALJ drew specific conclusions about Plaintiff's functional limitations based on his own reading of a substantial amount of raw technical data, test results, and imaging—at least some of which appear to corroborate Plaintiff's allegations of pain and limitations in movement—without the benefit of any reliable medical opinions to interpret this evidence."); *Highfield v. Saul*, 2020 WL 5706120, at *10 (S.D. Fla. Sept. 24, 2020) (O'Sullivan, Mag. J.) ("However, without any medical opinions to guide the ALJ's RFC determination based on the plaintiff's mental impairments, the ALJ incorrectly crafted his own limitations."). But both cases are different from ours.

In *Nakisha*, the ALJ improperly interpreted the claimant's complex medical records without the benefit of a guiding medical opinion. *See* 2020 WL 13595105, at *17 ("[A]n ALJ, as a lay person, is not qualified to interpret raw data in a medical record." (quoting *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1986))). Here, however, the ALJ didn't try to decipher any "raw technical data, test results, [or] imaging" on her own. *Ibid.* Instead, the ALJ relied on Dr. Delgadillo's progress notes—all of which were written in plain English and were devoid of complex medical imaging, scans, or technical information. *See generally* Dr. Delgadillo Progress Notes [ECF No. 10] at 306–96. There's also no blanket rule "that an ALJ may never interpret raw data in a medical record[,]" so long as the record is sufficient for the ALJ to "render a commonsense judgment about functional capacity[.]" *Groves v. Soc. Sec. Admin., Comm'r*, 2023 WL 5601151, at *5 (N.D. Ala. Aug. 29, 2023) (quoting *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014)).

And, in *Highfield*, the ALJ simply *ignored* medical evidence indicating that the claimant suffered from PTSD and "should have inquired further regarding the plaintiff's work limitations in light of his mental health." 2020 WL 5706120, at *10. Neither case stands for the blanket proposition that an ALJ is a helpless rube who must follow a medical opinion whenever it's presented. *Cf. Castle*, 557 F. App'x at 854 ("The ALJ appropriately considered all of the evidence Mr. Castle proffered in support of his

To the extent the ALJ didn't adopt Dr. Delgadillo's findings, the ALJ's decision was based on Trujillo's own testimony and the ALJ's personal observations. *See id.* at 21 ("The nature of the claimant's treatment, the findings made during the course of treatment, and the claimant's statements about her daily activities did not support a more restrictive finding as to residual functional capacity. That conclusion is supported by the claimant's own testimony, as well as other record evidence that she was able to shop, prepare meals, and perform both household chores and basic hygiene tasks."); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) ("When electing to disregard the opinion of the treating physician, the ALJ must clearly articulate its reasons."). This is exactly the kind of detailed and thorough RFC analysis ALJs must conduct. *See Watkins*, 2025 WL 18514, at *17 ("[T]he ALJ's decision makes clear that he considered all of Watkins's impairments, as well as Watkins's medical records . . . , Watkins's subjective statements, and the ALJ's own observation of Watkins at the hearing. The ALJ also explained how he resolved discrepancies in Dr. Carroll's and Dr. Cohen's medical opinions, as well as between Watkins's subjective complaints and the record as a whole."); *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014) ("The administrative law judge was not required to order an additional medical examination to develop a full and fair record. . . . Sarria's medical records, the reports of her treating psychiatrists and therapists, the assessments of agency physicians, and Sarria's self-assessments provided sufficient evidence for the administrative law judge to determine whether Sarria's depression was disabling.").[4] We therefore overrule Trujillo's first objection.

---

claim of disability. The district court erred in concluding that substantial evidence did not support the ALJ's RFC finding, that the ALJ's findings should have been underpinned by a medical source opinion, and that the ALJ was not qualified to interpret Mr. Castle's straightforward medical record." (citing *Manso-Pizarro*, 76 F.3d at 17)).

[4] *See also Darrell D. v. Kijakazi*, 2022 WL 4596341, at *3 (N.D. Ga. Sept. 29, 2022) (Grimberg, J.) ("Plaintiff suggests there was error because the ALJ was required to consider an examining physician's opinion in determining the RFC. . . . [M]edical opinion evidence as to a claimant's physical abilities and limitations is not even required in every case. Here, the ALJ relied on (among other things) the opinions of two consultants and Plaintiff's own testimony. This is more than a 'scintilla' and is

In her second objection, Trujillo says that Magistrate Judge Reid "simply repeat[ed] the mistakes of the ALJ and Defendant by willfully ignoring the fact that concentrating for two-hour increments is required for any job, and is thus not a true limitation accounting for a moderate [concentration, persistence, and pace ("CPP")] impairment." Objections at 4. Trujillo specifically charges both the ALJ and Magistrate Judge Reid with failing to consider how her limitations affected persistence and pace. *See id.* at 3 ("However, while a limitation to simple instructions may speak to concentration on some level, it says nothing that accounts for persistence or pace. Nor were these factors accounted for by the 'two-hour increments' limitation, as this would be the requirement for any job regardless of the CPP limitation.").

This objection doesn't make much sense to us. The ALJ's CPP analysis (which was based on the testimony of a vocational expert) *did* consider persistence and pace and *wasn't* premised on the "two-hour increments" limitation Trujillo complains about. The ALJ concluded that Trujillo "has a moderate limitation" regarding "concentrating, persisting, or maintaining pace[.]" ALJ Decision at 18. Although Trujillo "reported that she is only able to pay attention for a couple of minutes and does not follow written instructions well[,]" the ALJ noted that Trujillo "is the primary caregiver for her mother" and that she was responsible for "cooking for her dad and taking meals to his home." *Ibid.* Based on Trujillo's ability to "shop, prepare meals, and perform both household chores and basic hygiene tasks"—and to be "alert, fully oriented, polite, [and] cooperative" when interacting with others—the ALJ found that Trujillo "had an ability to maintain a route and initiate regular tasks," even though she "is limited to following simple instructions." *Id.* at 21. As Magistrate Judge Reid correctly explained, "a finding of moderate limitations in concentration, persistence, or pace does not prevent an individual from performing simple or unskilled work, so long as the medical record supports such

---

sufficient to constitute 'substantial evidence' in support of the ALJ's RFC determination." (cleaned up) (first quoting *Pupo*, 17 F.4th at 1065; and then citing *Sarria*, 579 F. App'x at 724)).

a limitation." R&R at 15 (first citing *Carpenter v. Comm'r of Soc. Sec.*, 614 F. App'x 482, 490 (11th Cir. 2015); and then citing *Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 611–13 (11th Cir. 2015)); *see also Winschel*, 631 F.3d at 1180 ("But when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.").

And the only case Trujillo cites as support for her second objection actually confirms the ALJ's view. *See* Objections at 4. In *Skibinsky v. Saul*, then-Magistrate Judge Damian agreed that "the ALJ's RFC assessment [was] deficient because the mental limitations in the RFC assessment indicating that she can 'concentrate and persist in 2 hour segments over an 8 hour day' d[id] not adequately address the moderate limitations in concentrating, persisting, or maintaining pace found in the ALJ's [analysis]." 2023 WL 4349153, at *11 (S.D. Fla. May 8, 2023), *report and recommendation adopted*, 2023 WL 4194532 (S.D. Fla. June 27, 2023) (Singhal, J.). But, as Judge Damian explained, "any error in the ALJ's RFC assessment [was] harmless in light of the ALJ's alternate step five finding—supported by substantial evidence—that Ms. Skibinsky could perform unskilled jobs, like mail sorter, produce sorter, and office helper." *Ibid.* So too here. The record reveals plenty of evidence supporting the ALJ's finding that Trujillo has only a moderate CPP impairment. *See* ALJ Decision at 21 ("The nature of the claimant's treatment, the findings made during the course of treatment, and the claimant's statements about her daily activities did not support a more restrictive finding as to residual functional capacity. That conclusion is supported by the claimant's own testimony, as well as other record evidence that she was able to shop, prepare meals, and perform both household chores and basic hygiene tasks."); *see also ante*, at 11 (quoting from the ALJ's CPP analysis). We therefore overrule Trujillo's second objection as well.

## CONCLUSION

In short, we **ORDER AND ADJUDGE** as follows:

1. Magistrate Judge Reid's R&R [ECF No. 18] is **ACCEPTED** and **ADOPTED in full**.

2. The Defendant's Motion for Summary Judgment [ECF No. 16] is **GRANTED**. The Plaintiff's Motion for Summary Judgment [ECF No. 13] is **DENIED**.

3. The ALJ Decision is **AFFIRMED**.

4. Pursuant to Federal Rule of Civil Procedure 58, final judgment will be entered separately.

5. The Clerk of Court shall **CLOSE** this case. All other pending motions are **DENIED as moot**. And all other deadlines are **TERMINATED**.

**DONE AND ORDERED** in the Southern District of Florida on August 18, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record